Wade J. Chernick, Law Office of Wade J. Chernick, Encino, CA, for Petitioners.

Wendy Benner–Leon, Esquire, Oil, U.S. Department of Justice, Washington, DC, CAC–District Counsel, Esquire, Office of the District Counsel, Department of Homeland Security, Los Angeles, CA, Ronald E. Lefevre, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, for Respondent.

Before: ALARCÓN, O'SCANNLAIN, and SILVERMAN, Circuit Judges.

MEMORANDUM **

Dinesh Khanna, his wife, and his son, citizens of India, petition for review of the Board of Immigration Appeals' dismissal of their appeal from an immigration judge's order denying their applications for adjustment under Section 245(i) of the Immigration and Nationality Act, 8 U.S.C. § 1255(i). Petitioners contend that the agency erred in ruling that Dinesh Khanna failed to meet his burden of establishing that the April 2, 2001 application for alien employment certification filed on his behalf was " 'approvable when filed' within the meaning of 8 C.F.R. § 1245.10(a)." We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition. The BIA's determination that the application for alien employment certification filed on Khanna's behalf was not meritorious in fact or approvable when filed is consistent with the agency's interpretation of the implementing regulations for eligibility to be "grandfathered" under Section 245(i), *Matter of Riero*, 24 I. & N. Dec. 267, 268–69 (BIA 2007), and is supported by substantial evidence.

PETITION FOR REVIEW DENIED.

Charles DIRKS, Plaintiff–Appellee,

v.

Joe GRASSO; et al., Defendants–Appellants.

No. 09–56187.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 9, 2010.

Filed Sept. 2, 2011.

---

* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

Joe H. Freeman, Esquire, Joe H. Freeman & Associates, Reseda, CA, Saul Reiss, Esquire, Law Offices of Saul Reiss, P.C., Santa Monica, CA, for Plaintiff–Appellee.

Melinda Cantrall, Thomas C. Hurrell, Esquire, Mariam Kaloustian, Blair L. Schlecter, Esquire, Hurrell & Cantrall

LLP, Los Angeles, CA, for Defendants–Appellants.

Before: NOONAN, BERZON, and CALLAHAN, Circuit Judges.

MEMORANDUM *

Los Angeles County Sheriff's Department officers appeal the district court's order denying in part their renewed motion for judgment as a matter of law in a suit brought under 42 U.S.C. § 1983 by Professor Charles Dirks ("Dirks"). The officers—Sargent Joe Grasso ("Grasso") and Deputies Ricky Baker and Darren Inana ("Baker" and "Inana")—brought the renewed motion after a jury deadlocked on Dirks's unlawful arrest and First Amendment retaliation claims.

We review the district court's denial of qualified immunity de novo, taking all disputed facts in the light most favorable to Dirks, the non-moving party. *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir.2010). A Sheriff's Department employee recorded the events leading up to Dirks's arrest on video, and Dirks made an audio recording. Viewing and hearing the recordings, we agree with the district court that the officers are not entitled to qualified immunity.

■ 1. The district court correctly concluded that the officers are not entitled to qualified immunity on Dirks's unlawful arrest claim. At the time of Dirks's arrest, it was clearly established that an officer must have probable cause to execute a warrantless arrest. *See Michigan v. Summers*, 452 U.S. 692, 699–700, 101

S.Ct. 2587, 69 L.Ed.2d 340 (1981). Here, the officers could not have reasonably believed they had probable cause to arrest Dirks.

The officers first claim they had probable cause to arrest Dirks for disturbing the peace, a violation of California Penal Code §§ 415 and 415.5. At no point prior to Dirks's arrest could a reasonable officer have found, as required by California law, that there was a "clear and present danger of imminent violence," nor that the intent of Dirks's communication was merely to disturb. *See In re Brown*, 9 Cal.3d 612, 108 Cal.Rptr. 465, 510 P.2d 1017, 1023 (1973). A reasonable officer would have known that Dirks intended to express his opposition to Grasso's attempt to meet with, interrogate, or fire a student Sheriff's Cadet, Yesenia Franco ("Franco"). Dirks in no way threatened the officers with violence, nor were his words likely to induce an immediate, violent response by the officers. *See United States v. Poocha*, 259 F.3d 1077, 1080–81 (9th Cir.2001). Accordingly, a reasonable officer could not have concluded that there was probable cause to arrest Dirks for a violation of California Penal Code §§ 415 or 415.5.

■ The officers next claim they had probable cause to arrest Dirks for obstruction of justice, a violation of California Penal Code § 148. However, verbal criticism of police officers and refusal to respond promptly to police orders do not support probable cause for a violation of § 148. *See Mackinney v. Nielsen*, 69 F.3d 1002, 1005–07 (9th Cir.1995); *People v. Bower*, 24 Cal.3d 638, 156 Cal.Rptr. 856, 597 P.2d 115, 122 (1979). A reasonable officer could not have concluded that there was probable cause to arrest Dirks for

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

violating § 148 based on Dirks's failure to immediately leave the sheriff's substation, his objection to Grasso's attempt to meet with Franco, or his standing in the entrance to the substation while engaged in a discussion with Grasso.

■ Baker and Inana argue that even if probable cause did not exist, they are entitled to qualified immunity because they were acting pursuant to Grasso's orders. Baker and Inana cite no binding authority holding that following a superior's orders entitles officers to qualified immunity, and none exists. They personally observed all the events leading up to the arrest of Dirks. Based on the totality of facts and circumstances within their knowledge, Baker and Inana could not reasonably have believed that probable cause to arrest Dirks existed. *See Ramirez v. City of Buena Park,* 560 F.3d 1012, 1020–21 (9th Cir.2009).

■ 2. Grasso is not entitled to qualified immunity on Dirks's First Amendment retaliation claim. Grasso argues that Dirks failed to prove that Grasso's desire to chill protected speech was a substantial or motivating cause of Dirks's arrest. *See Mendocino Envtl. Ctr. v. Mendocino Cnty.,* 192 F.3d 1283, 1300 (9th Cir.1999). At the time of Dirks's arrest, the First Amendment right to "verbally ... oppose or challenge police action without thereby risking arrest" was clearly established. *City of Houston v. Hill,* 482 U.S. 451, 462–63, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). Even assuming, without deciding, that the front lobby of a sheriff's substation is a nonpublic forum, Grasso's argument fails. Viewing the facts in the light most favorable to Dirks, Grasso arrested Dirks because he voiced his opposition to the planned interrogation or termination of Franco for her off-duty activities at a contentious student government meeting. The arrest was not a reasonable and view-point-neutral restriction on Dirks's speech. *See Sammartano v. First Judicial Dist. Court,* 303 F.3d 959, 965 (9th Cir.2002). A reasonable officer could not have concluded that it was constitutional to arrest Dirks for expressing his opposition to Grasso's conduct.

**AFFIRMED.**

CALLAHAN, Circuit Judge.

I dissent. I believe the officers in this case are entitled to qualified immunity from the claims made by Professor Dirks and would reverse.

Firstly, the officers are entitled to immunity on Dirks' unlawful arrest claim "unless [their] conduct violated a clearly established constitutional right." *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 813, 172 L.Ed.2d 565 (2009). Dirks argues that he had a constitutional right not to be arrested without probable cause. "The Supreme Court has 'recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present.'" *Rodis v. City and County of San Francisco,* 558 F.3d 964, 968–69 (9th Cir. 2009) (quoting *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant,* 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). Thus, the question is whether a reasonable officer *could have believed* probable cause to arrest existed. If so, the officers here are entitled to immunity. *Hunter,* 502 U.S. at 227, 112 S.Ct. 534.

The majority holds that no reasonable officer could have concluded there was probable cause to arrest. However, this case has already been tried to a jury, and

the jury deadlocked on the question of whether probable cause actually existed to arrest Dirks. The district court noted that "the fact that the jury in the first trial deadlocked on the question of probable cause directly supports the conclusion that reasonable minds could disagree regarding that issue." We need go no further than that. The fact that the jury was split on the question of whether probable cause actually existed establishes that a reasonable officer could have believed that he had probable cause to arrest, even if he turned out to be wrong. The district court noted this, but failed to appreciate the result that must necessarily follow: the officers here were entitled to qualified immunity. *Hunter*, 502 U.S. at 227, 112 S.Ct. 534.

Secondly, the officers are also entitled to immunity from Dirks' First Amendment claim. The deputies argue that a sheriff's substation lobby is traditionally a non-public forum, but apparently there was an official policy to hold this lobby open to the public for the purpose of lodging complaints. Therefore, the lobby must be considered a limited public forum,[1] *see Faith Center Church Evangelistic Ministries v. Glover*, 480 F.3d 891, 908 (9th Cir.2007) *abrogated on other grounds in Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008), and free speech in the lobby is not an unfettered right. "Restrictions governing access to a limited public forum are permitted so long as they are viewpoint neutral and reasonable in light of the pur-

pose served by the forum." *Id.* The question is whether the deputies' "restriction," i.e., demanding that Dirks leave and arresting him when he didn't, was reasonable in light of the purpose served by the forum.

The Supreme Court has explained that "necessities of confining a forum to the limited and legitimate purposes for which it was created may justify the State in reserving it for certain groups or for the discussion of certain topics." *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995). Restrictions based on content are permissible if they preserve the purposes for which the forum was opened. *Id.* at 830, 115 S.Ct. 2510. Grasso ordered Dirks to leave as soon as he determined that Dirks was not there to complain of the department's law enforcement policies— the reason for the lobby's limited public forum status—but rather to interject himself into the pending personnel matter between Grasso and his cadet. Thus, the restriction placed on Dirks' speech "preserve[s] the purpose for which the forum was opened," and is therefore reasonable. *Rosenberger*, 515 U.S. at 830, 115 S.Ct. 2510. The restriction was viewpoint neutral in that Grasso cut off all speech regarding personnel actions, regardless of which side they were on.[2] *See Faith Center*, 480 F.3d at 912.

Since the restriction on Dirks' speech was reasonable, content-based (rather than viewpoint-based), and preserved the pur-

---

1. The sheriff's substation lobby was clearly opened to the public to transact law enforcement business, but has not been opened to the public for speech generally. It has been limited to certain categories of speech, namely complaints about department policies and procedures. "A limited public forum is a subcategory of the designated public forum, where the government opens a nonpublic fo-

rum but reserves access to it for only certain groups or categories of speech." *Faith Center*, 480 F.3d at 908 n. 8.

2. The restriction might not have been viewpoint-neutral if, for example, it prohibited speech condemning the department's personnel actions, but allowed speech favorable to them.

pose for which the forum was held open, his arrest was not a violation of Dirks' First Amendment freedom of speech rights. *Rosenberger,* 515 U.S. at 830, 115 S.Ct. 2510. Therefore, the officers are entitled to immunity from Dirks' First Amendment claim as well as his false arrest claim. I respectfully dissent.